UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RASHEEN BELL,

                              Petitioner,

           v.

PATRICK P. REARDON,

                              Respondent.
_____

DECISION AND ORDER

21-CV-6510DGL

Petitioner Rasheen Bell has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2015 conviction following a jury trial in New York Supreme Court, Monroe County, of second-degree murder and second-degree conspiracy to commit murder. (Dkt. #1 at 1). Bell is currently serving an aggregate sentence of 35 years to life incarceration on those charges. (*Id.*). For the reasons that follow, the petition is denied.

## BACKGROUND

On May 28, 2015, a jury convicted Bell of murder for the shooting death of Alvin Metcalf, Jr., and also for conspiring to kill his then-girlfriend and prosecution witness, Autumn Didio.

The jury heard testimony that in late February 2014, Bell purchased a car from Metcalf. (Dkt. #13-1 at 979, 995). Around April 14, 2014, the car caught fire, and Bell needed a copy of the bill of sale from Metcalf to provide to the insurance company. (*Id.* at 979, 980). On April 30, 2014, Bell sent a text to Didio informing her that Metcalf told him he was "shit out of luck." (*Id.* at 1042). Bell told Didio that he was going to "go hard" and "take care of it," to which Didio said,

"Don't do anything stupid." Bell failed to follow that advice. Instead, Bell replied, "I'm a show him who he's toying with." (*Id.* at 1042, 1044-45).

Later that day, Didio was driving near Metcalf's business, with Bell as a passenger, when Bell asked her to pull over, and he exited the vehicle. (*Id.* at 581-82, 707-09, 726; *see also* Dkt. #13 at 233). When he returned approximately two minutes later, Bell sat in the vehicle with a gun in his lap and admitted killing Metcalf. He told Didio that "[i]t was perfect" – that "the [car] guy was outside with his back turned towards him" and that he shot him. (Dkt. #13-1 at 709-11).

The next day, Didio helped Bell scatter the clothes Bell wore during the murder at Durand Eastman Park (*id.* at 715, 717) and drove Bell to his brother's house where he sold the murder weapon to his cousin (*id.* at 716-20). Bell, who testified at trial, denied that he was at or near Metcalf's business on April 30, 2014, and claimed that after work, he had gone home, showered, taken his dogs outside, and smoked. (*Id.* at 979, 982-83).

In July and August 2014, Bell was in custody at the Monroe County Jail pending trial on this indictment and met Reginald McBride. (*Id.* at 1022-23). McBride and Bell were housed in the same cell block and spoke nearly every day. (*Id.* at 813). McBride testified that during these conversations, Bell admitted that he had killed a guy at a car lot (*id.* at 814) and that the only evidence the police and prosecution had was Didio's testimony (*id.* at 816). Bell asked McBride if he knew "anybody on the outside that [could] deal with her." (*Id.* at 817). Bell then wrote down all the information McBride would need, including a description of Didio's car. (*Id.* at 818). The note was admitted at trial (*id.* at 818-20), along with a piece of writing obtained from Bell's house that Bell admitted to authoring (*id.* at 871, 1024). Bell denied that he ever asked McBride to cause any harm to Didio and denied that the note McBride provided the prosecution was in his handwriting. (*Id.* at 983, 1024).

DISCUSSION

I.      Habeas Corpus Cases: General Principles

At the outset, certain principles must be kept in mind.  First, in reviewing state criminal convictions in a federal habeas corpus proceeding, a federal court does not sit as a super-appellate court, to decide matters of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  That long-established principle was reinforced by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, when a claim has been adjudicated on the merits in state court, federal courts must give deference to the state courts' findings and conclusions.

Where a state court rejected a petitioner's habeas claim on the merits, then, "the federal court must 'focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'"  *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001)) (additional citations omitted).  "A state court decision slips into the 'unreasonable application' zone 'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (modification in original).  To meet that standard, it is not enough that this Court may have decided the question of law differently; rather, to deem habeas relief appropriate, the state court's application of the law must demonstrate some additional "increment of incorrectness beyond error."  *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).

In addition, before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust her remedies in state court.  28 U.S.C. § 2254(b)(1).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (citations omitted), *cert. denied*, 544 U.S. 1025 (2005).

"To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim" in state court, "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). If the petitioner failed to do so, and is now procedurally barred from raising the claim in state court, the petitioner must "demonstrate cause and prejudice for the default," *Gray v. Netherland*, 518 U.S. 152, 162 (1996), or that the federal court's failure to review the claim "will result in a fundamental miscarriage of justice," *Harris v. Reed*, 489 U.S. 255, 262 (1989), in other words, that the petitioner is actually innocent.

## II. Petitioner's Claims

Giving the petition a fair reading, Bell asserts that he is entitled to relief because he was denied his Sixth Amendment right to effective assistance of counsel during the trial for six separate reasons. Specifically, he claims his lawyer was ineffective because he failed to (1) provide necessary medical records to defendant's expert psychiatrist; (2) move for a hearing pursuant to *Massiah v. United States*, 377 U.S. 201 (1964) and *People v. Cardona*, 41 N.Y.2d 333 (N.Y. 1977)[1]; (3) advise Bell of a plea offer; (4) properly challenge the jury venire; (5) seek a handwriting expert; and (6) move for a missing witness charge. (Dkt. #1 at 6, 8).

Respondent maintains that several of plaintiff's claims are unexhausted or procedurally barred and that all of them are meritless "because the state courts reasonably applied clearly

---

[1] A *Messiah/Cardona* hearing "tests whether a prosecution witness was acting as an agent of the District Attorney" and "deliberately elicit[ed] incriminating statements" from an indicted defendant in the absence of his counsel such that the defendant's statements must be suppressed under the Sixth Amendment. *See Fox v. Bezio*, 2011 WL 837158, at *3 n.5 (E.D.N.Y. Mar. 7, 2011).

established Supreme Court law in rejecting them." (Dkt. #12 at 2). I agree that several of Bell's claims are unexhausted and that the state court properly denied those that were exhausted.

### A. Unexhausted and Procedurally Barred Claims

Respondent asserts that three of petitioner's claims – regarding counsel's conduct with respect to the jury pool, any plea offer, and the unrequested *Messiah/Cardona* hearing – are unexhausted or procedurally barred. (Dkt. #12-1 at 16-20). I agree. Although petitioner claims otherwise, the record demonstrates that petitioner did not raise three of the alleged ineffective assistance claims before the New York Court of Appeals.

Bell raised counsel's failure to properly challenge the jury venire on direct appeal and raised counsel's failure to seek a *Messiah/Cardona* hearing and properly advise petitioner about taking a plea in his first CPL § 440.10(1)(h) motion. (*See* Dkt. #13 at 672-78, 684-86, 690-93, 723-25). The Fourth Department addressed and rejected the merits of these claims. (*Id.* at 724-25). When seeking leave to appeal to the New York Court of Appeals, petitioner failed to mention these claims. (*See id.* at 729-32). Therefore, they were not exhausted. *See* 22 N.Y.C.R.R. § 500.20(a)(4) (a letter seeking leave of the Court of Appeals must indicate "the grounds upon which leave to appeal is sought"); *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (appeal to Court of Appeals raised some claims but failed to "properly preserve" another where the letter failed to mention an issue, and "we assume that the Court of Appeals would construe a petitioner's leave application as abandoning claims that the petitioner had pressed to the Appellate Division below where those claims were not presented to the New York high court for review" (internal quotation marks omitted)); *Silva v. Keyser*, 271 F. Supp. 3d 527, 541 (S.D.N.Y. 2017) ("Even if the [c]ourt were to construe the claim as a constitutional claim, it would be unexhausted because the petitioner failed to raise it in his applications for leave to appeal to the Court of Appeals."), *appeal dismissed*, 2018

WL 1831778 (2d Cir. Mar. 26, 2018); *Smith v. Donnelly*, 2006 WL 1867918, at *4 (S.D.N.Y. July 6, 2006) (noting that a petitioner "must raise a federal claim at each level of the state court system" and therefore, by only raising an argument before the trial court and not on appeal, the claim is unexhausted); *cf. Smith*, 411 F.3d at 345 ("Even if the original Appellate Division briefs are submitted along with the leave application, New York's highest court has no duty to look for a needle in a paper haystack." (internal quotation marks omitted)).

These claims were not presented to the New York Court of Appeals and are, therefore, not exhausted. By state law, petitioners may not move a second time for leave to appeal to New York's highest court. Because of the state procedural bar, this federal court may consider the claims "exhausted" and consider them on the merits but only if petitioner can demonstrate either cause for failure to raise the issue and prejudice, or that he is actually innocent. Petitioner has not come forward with any such showing. Therefore, I must reject the claims that trial counsel failed to (1) properly challenge the jury venire; (2) seek a *Massiah/Cardona* hearing; and, (3) give advice concerning a plea.

**B.   Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). This two-part *Strickland* test imposes a heavy burden on one claiming ineffective assistance of counsel. Both prongs must be sufficiently established to warrant relief. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v.*

*Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). As such, "decisions which fall squarely within the ambit of trial strategy, . . . if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987), *cert. denied*, 484 U.S. 958 (1987). The court must also bear in mind that the *Strickland* standard "does not guarantee perfect representation, only a reasonably competent attorney." *Harrington*, 562 U.S. at 110 (internal quotation marks omitted).

A habeas petitioner presenting a claim of ineffective assistance of counsel "faces an additional hurdle: the high standard of deference that this Court owes to the state court's finding that he received constitutionally adequate assistance." *Rupert v. Noeth*, 510 F. Supp. 3d 3, 7 (W.D.N.Y. 2020) (citing *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020)). He would have to show not only that his attorney was ineffective, but also that the state court's ruling is "so lacking in justification that there was an error ... beyond any possibility of fairminded disagreement." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (internal quotations omitted). This "doubly deferential" standard, *id.* at 15, presents a "formidable barrier" to a habeas petitioner claiming that his lawyer was "ineffective," *id.* at 19.

### 1.     Medical Records to Expert Psychiatrist

The record reflects that counsel sought an opinion from a psychiatrist, Gary J. Horwitz, M.D., regarding the possibility of pursuing a "psychiatric defense" – in other words, an opinion on whether Bell, "by reason of mental disease or defect, lacked substantial capacity to know or appreciate the nature and consequence of his action or that it was wrong" or "whether an extreme emotional disturbance was operative" at the time of the incident. (*See* Dkt. #13 at 608-10). Bell asserts, and Dr. Horwitz's report reflects, that counsel provided Dr. Horwitz some, but not all, of Bell's mental health records. (*See* Dkt. #1 at 10-11; Dkt. #13 at 610). Bell argues that counsel's

failure to provide the expert what were "likely the most important and probative medical records" (Dkt. #14 at 7) amounts to constitutionally deficient representation.

First, Bell has failed to provide this Court with the medical records he claims were so critical, which inhibits assessment of whether there is a reasonable probability that the result of the proceedings would have been any different had counsel provided them to Dr. Horwtiz.

In any event, the report shows that the expert felt incapable of rendering an opinion on the availability of a psychiatric defense because Bell maintained his innocence, not because of the lack of records. (*See* Dkt. #13 at 610 ("a psychiatric defense is predicated on acknowledgment of engaging in the proscribed conduct. Psychiatric issues [are] then explore[d in] an[] attempt to understand any mental condition, mindset, misperceptions or distortions that would explain or characterize the motivations involved in the actions taken.")). According to Dr. Horwitz, only "*if*" petitioner was first willing to admit to the murder would he need the additional records to provide a fulsome assessment. (*See id.* (emphasis added)).

The Fourth Department – the last state court to consider the merits of this ineffective assistance claim – reasonably applied *Strickland*.[2]  It concluded that Bell's "contention [was] without merit because, as the psychiatrist explained in a letter to defense counsel, any psychiatric defense was logically precluded by defendant's insistence that he had nothing to do with the murder. Thus, defense counsel was not ineffective in failing to supply the expert with further documents that, under the circumstances, would have made no difference in the case." (Dkt. #13 at 724).

---

[2] "Although the . . . [c]ourt cited New York law in rejecting Petitioner's ineffective assistance claims, it applied the reasoning of *Strickland* and found that Petitioner received effective assistance. [(*See* Dkt. #13 at 724-25).] Therefore, the state court's decision is entitled to AEDPA deference." *Muller v. Lee*, 2016 WL 5401090, at *23 (N.D.N.Y. Sept. 5, 2016) (citing *Rosario v. Ercole*, 601 F.3d 118, 128 (2d Cir. 2010)), *report and recommendation adopted*, 2016 WL 5394742 (N.D.N.Y. Sept. 27, 2016).

The Fourth Department correctly found no ineffective assistance on this claim.

### 2. Handwriting Expert

Next, Bell claims that he was denied constitutionally adequate representation because his counsel failed to call an expert handwriting analyst to compare the handwriting from the note McBride contended Bell wrote while soliciting his assistance in killing Didio with the letter found in Bell's home that he admitted to writing. (Dkt. #1 at 38-39).

The trial court, the only court to assess the merits of this argument, found that claims of ineffective assistance based on the failure to call an expert are generally unavailing when a defendant fails to show that such expert testimony is available and would have assisted the jury in its determination, or that he was prejudiced by its absence. (Dkt. #13 at 50). *See also Franco v. Lee*, 2013 WL 704655, at *13 (E.D.N.Y. Feb. 26, 2013) (finding no basis to conclude that counsel acted unreasonably by not introducing expert testimony where "there is no indication that an expert was available and willing to testify in support of his position"). The trial court also noted that whether to call an expert is a tactical decision such that as long as the defense reflects a reasonable and legitimate strategy, his conduct will not fall to the level of ineffective assistance. (Dkt. #13 at 50).

I find that the state court reasonably applied *Strickland*.

> There is no indication in either the section 440.10 motion or the habeas petition that trial counsel gave less than reasonable consideration to hiring an expert. [Petitioner] also offers no evidence that such an expert was available or that he would have testified favorably if called. No affidavits or similar showings from potential witnesses were provided to the section 440.10 court or to us. Therefore, we cannot say whether expert testimony, if admitted, would have been helpful to the defense, much less whether it would have been sufficiently compelling to call into question the outcome of the trial.

*McDowell v. Heath*, 2013 WL 2896992, at *36 (S.D.N.Y. June 13, 2013). Therefore, I do not find that Bell is entitled to relief on this ground. *See also Mills v. Poole*, 2008 WL 2699394, at *26

9

(W.D.N.Y. June 30, 2008) ("[T]here is no *per se* rule that requires trial attorneys to seek out an expert. . . . In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review." (internal quotations omitted)), *mot. to vacate denied*, 2014 WL 4829437 (W.D.N.Y. Sept. 29, 2014).

### 3.     Missing Witness Charge

Bell also claims that counsel's representation was deficient because he failed to move for a missing witness charge when Robert Battle, who was on the People's witness list, was not called to testify before the jury. (Dkt. #1 at 36-37). Battle was one of several individuals present when petitioner visited the victim's business prior to the murder. Apparently, Bell thought that if Battle testified he could have been cross examined about the victim's "shady business" practices. (Dkt. #1 at 36). There was no basis for a missing witness charge.

A missing witness charge is given when an "uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; . . . the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and . . . the witness is available to such party." *People v. Gonzalez*, 68 N.Y.2d 424, 427 (1986). The instruction permits the jury to draw certain adverse inferences against the party who controls the witness. Such a charge makes no sense on the facts here. Battle's anticipated testimony that he was present when Bell visited the dealership prior to the shooting would have been cumulative. Plus, there was no dispute that Bell had visited the victim's place of business prior to the murder. Bell himself testified to that fact.

To the extent petitioner argues that Battle could have testified about Metcalf's "shady business" practices, the prosecution had no reason to put forth that evidence. As respondent states, Metcalf's business practices were not a "pending material issue" in the prosecution's case in chief.

*See Gonzalez*, 68 N.Y.2d at 428.  To the extent Bell's actual complaint relates to his counsel's failure to call Battle as a defense witness, that decision is often a tactical one best left to counsel.

Trial counsel was not deficient for failing to request the so-called missing witness charge because the charge was totally inappropriate in the circumstances of this case.  The alleged witness, Battle, was a minor potential witness and there is no reasonable probability that the outcome of the trial would have been any different had the charge been given.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus (Dkt. #1) is DENIED.  Because petitioner has not made a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 15, 2023.